# CHARLESTON.

POLING *et ux. v.* HUFFMAN *et al.*

Submitted January 30, 1894.—Decided April 4, 1894.

CREDITOR'S BILL.

A bill by a creditor or creditors to discover assets and enforce a debt or claim against the estate real and personal in the hands of the heirs or devisees is not demurrable because filed within six months of the date of the appointment of the personal representative of such estate.

W. T. ICE and M. PECK, for appellants, cited Code, c. 86, s. 6; 3 W. Va. 71; 22 W. Va. 373; 26 W. Va. 484; 2 Bur. Ch'y. Pr. 731.

S. V. WOODS for appellees cited Code (1819) c. 131, s. 6: Code (1868) c. 86, s. 7; 1 Sto. Eq. Juris. § 546; 21 W. Va. 76; 28 W. Va. 385; 22 W. Va. 306; Suth. St. Con. § 239; 22 W. Va. 380; 26 W. Va. 485.

DENT, JUDGE:

At the January rules, 1892, Anthony B. Poling and Verna Poling, his wife, filed their bill in chancery in the Circuit Court of Barbour county, setting up a claim for work and labor performed, amounting to the sum of nine hundred dollars against the estate of Rebecca E. Huffman,

deceased. Anthony Huffman as the sole heir and James A. Williamson as the administrator of said decedent, were made parties defendant. Said bill alleged that said decedent died possessed of certain real and personal estate, all of which the defendant Anthony Huffman took possession and control of as his own; that, no administrator having been appointed on the 21st day of November, 1892, more than six months after the death of said Rebecca E. Huffman, her estate, on motion of the plaintiff Anthony B. Poling, was committed to James A. Williamson, sheriff of Barbour county, to be administered. On the appointment of such administrator, suit was immediately brought. The bill seeks no relief against the administrator and alleges that no property went into his hands, but that it all went into the possession of said Anthony Huffman as aforesaid. It prays a discovery of the real and personal estate of said decedent and other matters from said defendant Huffman, and that, plaintiffs' debt being established, it may be paid out of said estate in the hands of said defendant.

The defendant Huffman demurred to the bill for the reason that at the time it was filed six months had not elapsed from the date of the appointment of the administrator, and that it was therefore an infringement upon his legal rights and premature. The court sustained the demurrer, and dismissed the bill, and plaintiffs appeal.

The administrator would have had the right to file such a bill both for the purpose of obtaining a discovery and surrender of the personal estate and for the purpose of having the real estate applied to the payment of decedent's debts. He could not be compelled to do so, however, as he had no funds in his hands to pay costs, and there appear to be no other debts against the estate except plaintiffs' unadjudicated claim. If that claim should prove unfounded, the administration would be wholly unnecessary.

The only question for us to determine is: Are the plaintiffs required by law to wait until six months from the date of the appointment of the administrator before bringing their suit. Defendants' counsel insist that section 7, c. 86, of the Code confers upon the administrator the exclusive right for the limited period of six months from the

date of his qualification to institute a suit to charge the real estate with decedent's debts; and to allow a creditor to file a bill against the heirs or devisees under section 6 of said chapter within the period aforesaid would defeat this provision of the law in favor of the administrator and would render the statute inharmonious and inconsistent.

The drift of judicial opinion has been to hold that section 7 aforesaid conferred on the administrator the exclusive right to institute suit within six months from his appointment. Judge WOODS, in the case of *Broderick* v. *Broderick*, 28 W. Va. 385, says: "This right was given to the personal representative for the limited period of six months from the date of his qualification, and afterwards until some creditor had instituted such suit; and was rather a limitation on the creditor's general right to bring such suit than a grant of authority to do so. *Reinhardt* v. *Reinhardt*, 21 W. Va. 76."

While such may be the general rule for the purpose of securing an equitable distribution of a decedent's real and personal property among all his creditors, yet there may arise circumstances, under which for the protection of creditors and the preservation of the estate equity may find it necessary to infringe upon or modify this rule by establishing just and reasonable exceptions thereto. However this may be, it is not necessary to a proper determination of this case to decide. Admitting the exclusive right of the administrator under section 7, to file what is called "a general creditors' bill," must this be so construed as to take away other rights of suit and action belonging to creditors prior to the enaction of said law for a like period of six months?

The remedies formerly belonging to the creditor were as follows: (1) An action at law against the personal representative. 2 Tuck. Bl. Comm. 112. (2) An action at law against the heir or devisee because of assets by descent. *Id.* 109. (3) A separate bill in chancery to compel payment of his individual debt out of the funds in the hands of the personal representative. (4) A bill in behalf of himself and other creditors to ascertain and distribute both the real and personal estate. As to the two foregoing remedies, see Story, Eq. Pl. §§ 99-102. (5) A bill of discovery against

the personal or real representative of the estate of a decedent to discover the assets liable to the payment of his debt. 2 Tuck. Bl. Comm. 425; *White* v. *Bannister*, 1 Wash. (Va.) 168; *Duval's Ex'r* v. *Trent's Devisees*, 6 Munf. 29; *Clarke* v. *Webb*, 2 Hen. & M. 8.

Under our present statutory enactments the right of the creditor to sue the heir or devisee at law is taken away, and he is given a remedy in equity in lieu thereof. With this exception, all other remedies of the creditor are left undisturbed, except the right conferred on the personal representative as aforesaid. To make the statutory enactments "harmonious and consistent" with each other, the defendants' counsel would have the court hold, that the creditor's remedies aforesaid must all rest in abeyance for the period of six months after the appointment of the personal representative with possibly the right to sue the personal representative at law for the purpose of establishing his claim or preventing the running of the statute of limitations—a compulsory plea under our present statute. Before the remedy was given in equity against the heir or devisee, the creditor had the right to commence his suit immediately on the death of the ancestor, and thus arrest the alienation of the land (1 Tuck. Bl. Comm. 111); otherwise, if it passed into the hands of an innocent purchaser for value, the creditors' rights against it were lost. Section 5, c. 86, provides: "Any heir or devisee who shall sell and convey any real estate which by this chapter is made assets, shall be liable to those entitled to be paid out of the said assets, for the value thereof with interest; in such case the estate conveyed shall not be liable, if at the time of the conveyance the purchaser shall have no notice of the fraudulent intent on the part of the grantor, and no suit shall have been commenced for the administration of the said assets, nor any report have been filed, as aforesaid, of the debts and demands of those entitled." In construing sections 6 and 7, this section should also be construed along with them, so as to produce the "greatest harmony and the least inconsistency." It could hardly be considered harmonious or consistent with justice to bind the hands of these plaintiffs for six months, to await the expiration of the administrator's exclusive privilege,

and in the mean time permit the sole heir to alienate the real estate to an innocent purchaser for value, and thus put it beyond the reach of plaintiffs' claim, and entirely defeat a recovery. There can be no doubt that a creditor would have the same right under the statute to file his bill immediately on the death of the ancestor, to prevent an alienation of the land, as formerly he had to bring his suit at law. It is true, in doing so he runs the risk of having his suit defeated by the personal representative showing sufficient personal funds applicable to his debt to satisfy it, and thus relieve the real estate from all liability. Such risk he must voluntarily assume.

This is a sufficient reason why the demurrer should have been overruled and the bill entertained, but the bill presents as a further cause for equitable interference the want of discovery.

As we have seen before, the creditor has the right to file a bill against both the personal and real representative of the estate for the discovery and application thereof to the payment of his debt. In the case of *White* v. *Bannister*, 1 Wash. (Va.) 168, it was held that: "A creditor may not know the state of the assets, the amount, nor the claims against the estate. He may, therefore, file his bill in equity to have a discovery of those matters, and, on the discovery being made, may either proceed at law, or that court may retain the cause, and determine disputes between the parties." Also *Duval's Ex'r* v. *Trent's Devisees*, 6 Munf. 29.

In this case the assets were unknown to the plaintiffs. They all went into the hands of a sole heir on the death of the decedent, who took charge of them without having an administrator appointed, refused to pay plaintiffs' demand and forced them to bring suit therefor, and now wants the court to deny them relief, while he enjoys not only the use of the estate for six months longer, but the opportunity of wasting or disposing of it in such manner and by such conveyance or incumbrance, as would put it beyond the control of a court of equity and deprive plaintiffs of a claim conceded by the demurrer to be meritorious and just.

The jurisdiction of equity is plainly beyond question, and the Circuit Court erred in denying it, and therefore the de-

cree complained of is reversed, the demurrer to the bill overruled, and the cause remanded for further proceedings therein according to the established rules of law and equity.