# CHARLESTON.

## HALE v. WHITE *et al.*

Submitted January 23, 1900—Decided March 31, 1900.

1. EQUITY—*Legal Right Inadequate.*

    A general creditor of a deceased person cannot sustain a bill in equity on a purely legal demand, unless he shows that he has exhausted his legal remedy, or that such remedy, for some good cause, would be inadequate or unavailing. (p. 703).

2. ADMINISTRATOR—*Account—Equity.*

    A personal representative who has filed the inventories and made his annual statements of account as required by chapter 87 of the Code cannot be called on to restate such accounts, in equity, unless the accounts already rendered by him are, for some sufficient reason, surcharged and falsified. (p. 705).

3. EQUITY—*Bill—Jurisdiction.*

    Where the bill shows that the estate is solvent and the assets superabundant, the mere pretext of the want of discovery will not give equitable jurisdiction against a personal representative who is not shown to have neglected any of the statutory requirements relating to his duties as such representative to the injury of the plaintiff. (p. 705).

Appeal from Circuit Court, Mercer County.

Action by Mary D. Hale against James A. White, administrator, and others.   Decree for plaintiff and defendants appeal.

*Reversed.*

Rucker & Keller and W. B. Kegley, for appellants.
Johnston & Hale, for appellee.

Dent, Judge:

In the chancery cause of Mary D. Hale against James A. White, etc., from the circuit court of Mercer County, the following statement is adopted from plaintiff's brief: "On the 5th day of May, 1880, Margaret J. Hale, the ancestor of the plaintiff, leased certain mineral properties owned by her in the county of Franklin, state of Virginia, to one Robert F. Mason, for certain annual rents or royalties, and which lease was to run for the period of twenty-five years, and to expire in the year 1905.   This lease and the rents thereunder, subsequently, by the death of Margaret J. Hale and a partition of the said real estate of said Margaret, became the property of the plaintiff and her sister, Jane S. Hale.   Afterwards, and pending a suit between the said Hales and said Mason for the recovery of the rents due upon or under the said lease, to wit, on the 12th day of July, 1888, a contract was entered into between the said Hales, Mason, and the defendant, M. M. Rogers, whereby said suit was settled and compromised, and said leases assigned by said Mason to said Rogers; the latter assuming the payment of said rents upon or under said lease, and covenanting that the said lease upon the said land so leased should yield to the said plaintiff and her sister, Jane S. Hale, one hundred and fifty dollars each year thereof from the 6th day of September, 1887, whether the mines on said lands were worked or not, etc., which said contract was reduced to writing, duly signed, and acknowledged.   Contemporaneously with this contract the said Rogers, with J. H. Bramwell, executed to the said plaintiff and her sister, Jane S. Hale, a bond for two thousand dollars, with interest, for the payment of said rents.   After the execution of this contract, to wit, on the 4th day of October, 1888, the said Jane S. Hale intermarried with defendant, Carter

Berkley. Jane S., the wife of Dr. Berkley, died in Virginia on the 28th day of May, 1889, intestate and without issue. Her estate and interest in this lease and the rents derived therefrom became the property of her husband, Dr. Berkley. Code Va. 1887, § 2557. After the death of Berkley's wife, he assigned, in writing, the said interest to the plaintiff; thereby vesting in the plaintiff the whole beneficial interest in and under said lease and the said bond of Rogers and Bramwell, and the right to recover the whole of said rents. A large amount of rents accrued and became due and in arrears, and demand was made on defendant Rogers for the payment; and, he failing to pay, the plaintiff on the —— day of July, 1897, instituted this suit to recover the same. To the plaintiff's bill the defendants, Bramwell's executors, filed a demurrer and an original and amended answer, to each of which answers the plaintiff replied generally, and depositions were taken and filed. On the 1st day of December, 1898, and again on the 11th day of March, 1899, the Consolidated Mining Company, a corporation, tendered petitions, and asked leave to file same in this cause, and each of which the court refused to permit to be filed. Such proceedings were had in the said cause, when on the 11th day of May, 1899, a decree was rendered by the court in favor of the plaintiff against the defendants, the executors of said Bramwell, for the sum of one thousand two hundred and thirty-nine dollars, and the costs of the suit, from which decree the said defendants, Bramwell's executors, have obtained an appeal to this Court.''

Six grounds of error are assigned by appellants, to wit: ''(1) The court erred in overruling the demurrer of petitioners to plaintiffs' bill. (2) The court erred in assuming jurisdiction of the case, and the bill should have been dismissed for want of jurisdiction. (3) The court erred in decreeing in favor of the plaintiff for any part of the amount claimed to be due on account of the interest of Jane S. Berkley (formerly Hale). (4) The court erred in not dismissing this cause upon the hearing because there was no evidence that the leases under which the bond sued on in this case was given were still in existence and unexpired. (5) The court erred in refusing to permit the Consolidated Mining Company, a corporation, to become a

party to this cause upon its several petitions, tendered to the court, praying to be permitted to make defense to the bill herein. (6) Because the court erred in failing to decree that the amounts admitted in plaintiff's bill to have been paid on the bond sued on in this case, amounting to about three hundred and ninety-three dollars and seventy-five cents, should be credited thereon."

The first question for consideration is the demurrer to the bill. The will of J. H. Bramwell, deceased, is filed as an exhibit, from which it appears that his estate is very large, and all of which is charged with the payment of his debts. There appear to be no debts against the same but the plaintiff's so there can be no possible question as to the sufficiency of the assets. The bill alleges that plaintiff does not know the amount or character of the assets, or what disposition the executors have made of them, and therefore she prays a discovery. There is no allegation that they have not returned the inventory and made the annual settlements required by law, or that they were in any manner concealing the assets or disposing of them illegally, or that they had refused to pay any just claim against the estate, so that the prayer for discovery and account must be treated as merely colorable. So the inquiry is narrowed down to the question whether a creditor of a deceased person had the right, in the first instance, to institute a chancery suit on a claim, admitted or disputed, against the personal representative, full-handed with assets, without regard to the conduct of such personal representative in the administration of such assets. In other words, has a creditor the right to disregard an adequate remedy at law, and sue on a mere legal demand, in a court of equity? The present remedies of the creditor of a deceased person are as follows: (1) An action at law against the personal representative. Section 19, chapter 85, Code. (2) A separate bill in chancery to compel payment of his individual debt out of the funds in the hands of the personal representative, and discover the funds or estate liable to the payment thereof. Story, Eq. Pl. §§ 99-102; 2 Tuck. Bl. Comm. 425; *White* v. *Bannister's Ex'rs*, 1 Wash. (Va.) 168; *Duval's Ex'r* v. *Trent's Devisees*, 6 Mumf. 29; *Clarke* v. *Webb*, 2 Hen. & M. 8. (3) A bill in

behalf of himself and other creditors to ascertain and distribute both the real and personal estate. This is subject to the right of the personal representative to bring such suit within six months from his qualification. Section 7, chapter 86, Code. (4) A bill against an heir or devisee because of assets by descent. Section 6, Chapter 86, *Id.* The remedies given in the case of *Poling* v. *Huffman*, 39 W. Va. 322, (19 S. E. 421), are the common-law, and not the statutory, remedies. In the present classification the third and fifth classes, as given in the case referred to, are combined in the second class, as being so closely related to each other as hardly to require a separate classification, as the remedy in such case is dependent on the neglect of duty or misconduct of the personal representative. To entitle a creditor to institute his suit under either of the three last heads enumerated, he must have either exhausted his remedy under the first,—being the legal remedy,—or show that such remedy would for some reason be unavailing, or that the personal representative had neglected his legal duties to such an extent as to justify the interposition of a court of equity. If, for instance, the personal representative has failed to file the inventory required by section 2, chapter 87, Code, or the account of sales required by section 3, *Id.*, or make his annual statements or settlements as required by section 7, *Id.*, and the creditor is thus prevented from knowing the true condition of the estate, although he might compel such personal representative to settle his accounts under section 8, *Id.*, nevertheless he will be entertained in equity, as giving a more complete and adequate remedy; and then, if the personal representative admits assets, he may have a decree for his debt, if just, for the reason that, the court having taken jurisdiction because of the neglect of duty on the part of the personal representative, such jurisdiction cannot be evaded by the admission of assets, but the court will go on to complete justice between the parties. An admission of assets renders a statement of accounts unnecessary, but cannot defeat the equitable jurisdiction which has already attached. But where the personal representative is faithfully discharging his duties, and is full-handed with assets, and the only question involved is the justness of plaintiff's

legal demand, equity has no jurisdiction.   Section 5, chap--
ter 87, Code, makes it the duty of the personal representa-
tive to defend all doubtful or unjust demands against the
estate, and in all such cases he is entitled to trial by a jury.
When a judgment is obtained at law, and execution is re-
turned "No property found," then a court of equity will
take jurisdiction for the purpose of compelling the discov-
ery of assets and compelling the proper distribution
thereof.   The ground of equitable jurisdiction is that per--
sonal representatives are trustees of their decedent's es--
tates for the payment of debts and legacies.   In the case
of *Righter* v. *Riley*, 42 W. Va. 633, (26 S. E. 357), this.
Court held that equity would not interfere with a trustee·
in the proper discharge of the duties of his trust.   So long,
therefore, as a personal representative is faithfully dis--
charging the duties of his trust and administering the·
same in accordance with law, and there is no deficiency of
assets, there is no excuse for equitable interposition.
Since the statute provides for the filing of inventories and
the settlement of the accounts of personal representatives
annually, the allegation of the want of knowledge of the
condition of the estate and the necessity for discovery is,
not sufficient, unless it further shows neglect of duty on·
the part of the personal representative, in some way injur--
ious to the creditor complaining.   These statutory provis--
ions were enacted for the protection of the estate, the cred--
itors thereof, and others interested therein, and, if the
personal representative files his inventories and makes.
his settlements in accordance therewith, no creditor has a
right to complain, or seek equity for an account or discov--
ery of assets; and to hold that any creditor might at any
time, simply because he has a legal demand against the es--
tate, sue in equity, instead of at law, for the enforcement
thereof, would be destructive and ruinous to the estate,
and permit the same to be devastated with unnecessary
costs; for what one creditor could do, all could do.   Each
in turn could file his bill, and, on confession of assets, take
a decree for the same.   The common law would not per-
mit this, nor does the statute law.   *Bacheldor* v. *Elliott's
Adm'r*, 1 Hen. & M. 10.   Nor do any of the cases relied on
by plaintiff refute this doctrine.   They each hold that, in

.the special case shown, equity had jurisdiction, and no more, and give some specific reason for assuming such jurisdiction. The case of *Beverly* v. *Rhodes*, 86 Va. 415, (10 S. E. 572), is cited as the only one in opposition to this doctrine. The first point in the syllabus of that case is as follows, to wit: "A single creditor at large may sue personal representative of deceased debtor in equity for account of assets, payment of his debts, and general relief." What is meant by the terms "at large" and "general relief," it is hard to understand. They may, however, be treated as surplusage. The first probably means "general," while the other requires no specific meaning. There is no question but that a single general creditor may sue in equity for account of assets, providing the personal representative has not settled his accounts in the manner provided by statute, or there exists any other good reason for such suit; but he cannot sue in equity merely to establish a legal demand, and make an account or discovery of assets a mere pretext for so doing. Pretexts cannot give equitable jurisdiction, where it does not exist in their absence. *Hume & Warwick Co.* v. *Condon*, 44 W. Va. 553, (30 S. E. 56); *Thompson* v. *Iron Co.*, 41 W. Va. 574, (23 S. E. 795); *Russell* v. *Dickeschield*, 24 W. Va. 70; *Grafton* v. *Reed*, 26 W. Va. 437. In this case neither the necessity for discovery nor account is shown to exist, by the allegations of the bill, but its sole object is the establishment of a claim purely legal in its nature. The demurrer to the bill should therefore have been sustained. The decree is reversed, the demurrer sustained, and the cause is remanded for further proceedings to be had therein in accordance with the principles of equity.

*Reversed.*